**Papetti Samuels Weiss McKirgan LLP**
Scottsdale Quarter
15169 North Scottsdale Road
Suite 205
Scottsdale, AZ 85254

**Jared Sutton** (State Bar No. 028887)
Direct Dial: 480.800.3527
Email: jsutton@PSWMlaw.com

**Jennifer Lee-Cota** (State Bar No. 033190)
Direct Dial: 480.800.3528
Email: jleecota@PSWMlaw.com

*Attorneys for Best Western International, Inc.*

# IN THE UNITED STATES DISTRICT COURT

# IN AND FOR THE STATE OF ARIZONA

| | |
|---|---|
| Best Western International, Inc., | Case No. |
| Plaintiff, | **COMPLAINT** |
| v. | |
| Supreme International Hotels, Inc.; Shakeel Syed and Saba Amrin, individuals, | |
| Defendants. | |

Plaintiff Best Western International, Inc. ("Best Western"), for its Complaint against Supreme International Hotels, Inc., Shakeel Syed, and Saba Amrin, alleges as follows:

## **PARTIES, JURISDICTION, AND VENUE**

1.      Plaintiff Best Western is a non-profit corporation organized under Arizona law with its headquarters located in Phoenix, Arizona.

2.      Upon information and belief, Defendant Supreme International Hotels, Inc. ("Supreme") is a Florida corporation with its principal place of business in Orlando, Florida.

3.      Upon information and belief Shakeel Syed ("Syed") and his wife Saba Amrin are the sole shareholders of Supreme.

4.      Upon information and belief Syed is a resident of Orlando, Florida.

5.      Defendant Saba Amrin is Defendant Syed's spouse and upon information

Papetti Samuels Weiss McKirgan LLP
Scottsdale Quarter
15169 North Scottsdale Road, Suite 205
Scottsdale, AZ 85254

PSWM

and belief, is also a resident of Orlando, Florida. Defendant Saba Amrin is named solely for community property purposes.

6.     Defendants executed a Terms of Approval agreement with Best Western, pursuant to which, among other things, they agreed that any action or dispute arising from, related to, or incident to the Terms of Approval, the Application, or the Application process, shall be brought exclusively in the state or federal courts located in Phoenix, Arizona. They also consented to the jurisdiction and venue of the courts in Phoenix, Arizona. (Ex. A, Executed Revised TOA.)

7.     Defendants also executed a Best Western Membership Agreement pursuant to which, among other things, they agreed that all disputes arising from or related to the membership application process, the membership agreement, or termination of membership would be resolved exclusively in the state or federal courts in Maricopa County, Arizona. (Ex. B, Best Western Membership Agreement.)

8.     Defendant Supreme designated Defendant Syed as the Voting Member for the membership. As Voting Member, he agreed to be bound by the terms in the Membership Agreement. As the Voting Member, Syed signed both the Terms of Approval and Membership Agreement. (Exs. A & B.)

9.     This Court has jurisdiction over the claims and venue is proper pursuant to 28 U.S.C. §§ 1391 and 1332 because: (1) Best Western is an Arizona non-profit corporation with its principal place of business in Phoenix, and its witnesses are either located in Phoenix or available in Phoenix; (2) Defendants are citizens of Florida; (3) the amount in controversy exceeds $75,000.00; (4) there are no matters pending between the parties in any other jurisdiction; and (5) Defendants executed a contract that contained a forum-selection clause requiring all disputes arising from that contract to be resolved by state or federal court in Arizona and according to Arizona law.

10.     The exercise of personal jurisdiction over Defendants by this Court is proper pursuant to and because, among other reasons, Defendants expressly agreed to litigate all disputes with Best Western arising from or related to the contracts with Best

Papetti Samuels Weiss McKirgan LLP
Scottsdale Quarter
15169 North Scottsdale Road, Suite 205
Scottsdale, AZ 85254

PSWM

1    Western, or any relationship between the parties, in state or federal courts located in

2    Maricopa County, Arizona.

### BEST WESTERN'S VĪB® BRAND

4    11.    Best Western is a hotel-industry, service organization that operates on a

5    cooperative basis by and for its hotelier members, which are independent owners and

6    operators of Best Western® branded hotels.

7    12.    Best Western provides its members with a license to use its trademarks, a

8    reservations system and marketing campaigns, as well as an option to participate in

9    collective purchasing of hotel equipment, furnishings, and supplies, among other

10   services that members can elect to purchase.  Best Western employs a large number of

11   people worldwide who are dedicated to providing member hotels with various services.

12   13.    The Vīb® brand (pronounced "vibe") is among Best Western's portfolio

13   of brands offered for membership.

14   14.    Vīb is short for "vibrant."  It is a stylish and technology-centric hotel

15   concept that features vibrant and modern design with a focus on convenience,

16   technology, and social engagement.  The brand is intended to connect urbanites and

17   millennials in the heart of primary and urban markets.

18   15.    Since 1959, Best Western has registered various trademarks, service

19   marks, and collective membership marks with the United States Patent and Trademark

20   Office ("USPTO").  On April 14, 1959, the Best Western logo was first registered as a

21   service mark by the USPTO under Registration No. 677,103.  Best Western has

22   developed the Best Western Marks at great expense over the past decades.  With

23   respect to the Vīb brand, Best Western has registered and uses the following:

24        a.    On September 15, 2015, the Vīb word mark was registered under

25   Registration No. 4,814,637.

26        b.    On June 26, 2018, the Vīb BEST WESTERN word mark was registered

27   under Registration No. 5,503,169.

28        c.    On August 11, 2015, the Vīb Best Western logo was registered under

Papetti Samuels Weiss McKirgan LLP
Scottsdale Quarter
15169 North Scottsdale Road, Suite 205
Scottsdale, AZ 85254

PSWM

Papetti Samuels Weiss McKirgan LLP
Scottsdale Quarter
15169 North Scottsdale Road, Suite 205
Scottsdale, AZ 85254

PSWM

1    Registration No. 4,792,006.

2         d.    Best Western has prototype drawings and renderings for a new

3    construction Vīb branded hotel that are copyright protected.

4         e.    On June 1, 2021, certain trade dress to be used for the Vīb brand hotel's

5    exterior was registered by the USPTO, as Registration No. 6,373,312.

6         16.    While every Best Western branded hotel is unique and owners can

7    customize the space in many respects to suit their own style, including highlighting

8    local sites and local flare, each Best Western branded hotel has certain brand standards

9    and features that are required.

10        17.    For the Vīb brand, those required features include a lobby or rooftop bar

11   with a bar area that has signature seating that serves beer and wine at a minimum.

12        18.    In 2017, Syed was in the process of purchasing certain real estate located

13   at 6805 Visitors Circle in Orlando, Florida to build a hotel (the "Hotel").

14        19.    Defendant Syed expressed an interest in becoming a Best Western

15   member and building the Hotel as a new construction Vīb hotel.

16        20.    On October 5, 2017, in response to Syed's request for information, Best

17   Western sent a copy of its prototype drawings for the Vīb to Syed's real estate broker

18   LandSmart Realty.  (Ex. C, 10/5/17 Email re CAD Drawing Request.)

19        21.    The prototype drawings included references to the bar requirement, as

20   shown in the images below:





22.     On November 28, 2017, Best Western sent Syed an email with additional information about how to apply for a membership for building the Hotel as a new construction Vīb hotel.  The email included multiple attachments and references to various documents, including a Vīb brochure describing the features of the Vīb brand and a link to bestwesterndevelopers.com, where additional information about the Vīb brand was posted.  (Ex. D, 11/28/17 Email re Proposed Construction.)

23.     The Vīb brochure described the Vīb's features, to include a lobby bar or roof top bar area, as shown in this list of features from the brochure below:

**Lobby Features:**

- Combined multi-functional lobby space –
  3,800 sq. ft. minimum
- General lobby – 2,100 sq. ft.
- Cafe area – premium coffee and food
  offerings for each meal period
- Lobby bar or roof top bar area
  (beer and wine minimum)
- Signature front desk pods and back drop
- Kiosk check-in- 1 minimum
- Virtual concierge
- Sundry/tech buy
- Free Wi-Fi
- Fireplace or water feature in sitting area

24.     The link to the bestwesterndevelopers.com site that Best Western provided to Syed included a variety of materials about the Vīb, including:

Papetti Samuels Weiss McKirgan LLP
Scottsdale Quarter
15169 North Scottsdale Road, Suite 205
Scottsdale, AZ 85254

PSWM

a.  A link to download Best Western's prototype and renderings for the Vīb, which showed the required features, to include a bar area, as shown below:

**Vīb Prototype**

The Vīb prototype is cost effective to build and operate, with a flexible plan for new build or repurpose design. Hotel amenities include free wi-fi in lobby and guestrooms, grab-n-go stations serving premium food and coffee, bar and cozy fireplace, 700 sq. ft. Zen zone, gaming pods, fitness center and more.

b.  The Vib brochure described above in paragraph 23;

c.  A video describing the features of the Vīb and showing pictures of a lobby bar:



*See* Best Western Vīb – A New Urban Boutique Hotel Concept, YOUTUBE, https://www.youtube.com/watch?v=Txaudk8ECUg.

25.     Best Western's Vīb 2017 Style Guide also described required features for the hotel, to include a lobby bar or rooftop bar area as shown below:

Papetti Samuels Weiss McKirgan LLP
Scottsdale Quarter
15169 North Scottsdale Road, Suite 205
Scottsdale, AZ 85254

PSWM



## DEFENDANTS' APPLICATION FOR MEMBERSHIP FOR A VĪB-BRANDED HOTEL

26.    On January 16, 2018, Syed submitted an application for a Best Western membership for building the Hotel as a new construction Vīb.

27.    Around the same time Syed submitted an application, he had preliminary concept plans prepared by his architect, Robby Joshi from the firm Archenics, which were provided to Best Western.  Those plans included both a lobby bar and a rooftop "tiki bar," as shown below:

Papetti Samuels Weiss McKirgan LLP
Scottsdale Quarter
15169 North Scottsdale Road, Suite 205
Scottsdale, AZ 85254

PSWM



28. On or about February 14, 2018, Best Western staff met with Syed and his architect, Robby Joshi from the firm Archenics, to review concept plans that Archenics had drafted for the proposed project. Those plans likewise included both a lobby bar and a rooftop "tiki bar," as shown below:





29. On or about March 8, 2018, Best Western staff again met with Syed and Archenics, this time to review preliminary plans that Archenics had drafted. Those plans likewise included a lobby bar and a rooftop "tiki bar," as shown below:

Papetti Samuels Weiss McKirgan LLP
Scottsdale Quarter
15169 North Scottsdale Road, Suite 205
Scottsdale, AZ 85254

PSWM



30.     On or about March 12, 2018, Syed's application was presented to the Best Western Board of Directors ("Board") for approval, and the Board approved the application.  Among the materials presented to the Board included a set of preliminary plans that Syed's architect, Archenics, had drafted using the Vīb prototype drawings, and those plans again included both a lobby bar and a rooftop "tiki bar," as shown below:

Papetti Samuels Weiss McKirgan LLP
Scottsdale Quarter
15169 North Scottsdale Road, Suite 205
Scottsdale, AZ 85254

PSWM



GROUND FLOOR PLAN
VIB HOTEL
INTERNATIONAL DRIVE, ORLANDO, FLORIDA



7TH FLOOR PLAN
VIB HOTEL
INTERNATIONAL DRIVE, ORLANDO, FLORIDA

31.     The Board voted to approve the application, subject to a number of conditions as detailed in a Terms of Approval Agreement that was to be sent to Syed for his review, consideration, and signature.

32.     Before Best Western could send the Terms of Approval agreement to Syed, Syed expressed some discomfort about having to provide a bar with alcohol at the Hotel.

33.     Best Western told Syed that having a bar that serves alcohol is a requirement for a Vīb hotel and that if he did not want to proceed with the Vīb project and Best Western's requirements about serving alcohol he could withdraw his

application and go another direction with his Hotel and Best Western would refund his application fees.

34.     In a recent letter from Syed's counsel dated February 1, 2022, from Jaime Eddy of Gulati Law, she describes this dialogue as follows: "Supreme did contact BW regarding their inability to serve alcohol, as this was discussed prior to Supreme's execution of the Agreement, but BW advised the alcohol requirement was non-negotiable."  (Ex. E, 2/1/22 J. Eddy Letter.)

35.     Despite Best Western having told Syed that this feature of serving alcohol was non-negotiable, Syed did not at that time go another direction with the Hotel and instead decided to proceed with the application and requested that Best Western send him the Terms of Approval Agreement and Membership Agreement for execution.

36.     On March 30, 2018, Best Western sent Syed the Terms of Approval, which among other things, (a) required Syed to sign and return the Terms of Approval agreement and Membership Agreement, (b) set certain deadlines for Syed to submit preliminary plans showing compliance with the Vīb construction requirements and Vīb Signature Features, (c) set certain deadlines to begin and complete construction, (d) required Syed/Supreme's compliance with all design requirements; the Vīb prototype drawings; the Vīb Signature Features; the Vīb Brand Standards; the Brand Identity Guidelines for Vīb hotels; and all Regulatory Documents, (e) provided for the payment of a Development Incentive by Best Western to Syed in the amount of $10,000 per guest room, to be paid within thirty (30) days of the Hotel being activated on Best Western's reservation system, and (f) set forth Syed's obligations for paying liquidated damages to Best Western in the sum of $2,000 per guest room (with 120 guest rooms) in the event the application was withdrawn or terminated/cancelled and Syed (or a new owner) conducted hotel operations at the approved location as another brand.

37.     The deadline for Syed to review and agree to the Terms of Approval was April 14, 2018, but Syed sought an extension of the deadline to sign the Terms of

Papetti Samuels Weiss McKirgan LLP
Scottsdale Quarter
15169 North Scottsdale Road, Suite 205
Scottsdale, AZ 85254

PSWM

1   Approval, and Best Western agreed.

2   38.   Sometime in April 2018, Syed had revised preliminary plans sent to Best

3   Western staff for their review.

4   39.   Best Western completed its review of these revised preliminary plans on

5   April 25, 2018.  As part of the plan review, Best Western prepared a Property

6   Improvement Plan – Plan Review Document, which included a reference to a cocktail

7   bar at item "J," as shown below:

8

9

| J. | COCKTAIL BAR: |
|---|---|
| | **GENERAL:** |
| | 1   Provide a cocktail bar with food service. |
| | **BAR FINISHES:** |

FL-516 Vib Preliminary Review                    Printed 4/25/2018

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| CONDITION REQUIREMENT: |
|---|
| 2   Provide signature Vīb millwork finishes. |
| **CEILING:** |
| 3   Provide a ceiling/ architectural feature that delineates the space as its own, while still being part of an overall open plan. *Recommendation: acoustic tile cloud with 2'x2' decorative or reveal edge tile* |
| 4   Provide a minimum 12'-0" high ceiling. |
| **DIGITAL MEDIA:** |
| 5   Coordinate installation requirements with digital media provider. |
| 6   Provide electrical box for power and cable for a minimum of two (2) televisions to be located on the wall behind the cocktail bar. Providing blocking for installation of 40" televisions. Locate outlets to conceal all wiring/ cords. |
| **LIGHTING:** |
| 7   Provide downlights above the bar area. |
| 8   Provide dimmable decorative lighting fixtures, such as pendants, wall sconces, recessed cans and/ or wall washers. |
| **HEATING & COOLING:** |
| 9   Provide central air/ heating. PTAC's are not acceptable in any public area. |

22   40.   On or about May 21, 2018, Syed sought reconsideration from the Board

23   about the Development Incentive described in the Terms of Approval, and the Board

24   agreed to the request on June 5, 2018.  Syed did not at this time seek a waiver or

25   reconsideration of the Vīb requirement of having a bar that serves alcohol.

26   41.   On or about June 5, 2018, Syed sent Best Western a copy of a feasibility

27   study that he had commissioned for the project.  The feasibility study was prepared by

28   Mazili Hotel Group. The study concluded that "we are of the opinion that there is

Papetti Samuels Weiss McKirgan LLP
Scottsdale Quarter
15169 North Scottsdale Road, Suite 205
Scottsdale, AZ 85254

PSWM

sufficient market demand to support the construction of a new 118 unit hotel."  The study was based on a variety of factors, to include a roof top bar, as shown below:

Our conclusions relating to the estimated market performance of the subject hotel and market feasibility of the proposed project are based on the following factors:

- An opening date of January 1st, 2020 has been assumed for the proposed project.

- We have based our estimates of operating results on the assumption that the hotel will be a limited service property positioned at the top of the local market in terms of product quality and service levels. Additionally, the property will include the following facilities and amenities:

  ➢ 118 modern rooms;
  ➢ Roof top Bar
  ➢ 24 hr Pavilion Pantry Market
  ➢ A meeting room that can accommodate up to 100 people;
  ➢ Approximately 600 square feet of meeting space;
  ➢ A complimentary Breakfast sitting area with table and chairs;
  ➢ Complimentary in-room coffee;
  ➢ Self service laundry facilities;
  ➢ Iron and ironing board; Hairdryer;
  ➢ Safety Deposits in each suite;
  ➢ Free Wireless Internet access
  ➢ Access to business services (printer and fax);
  ➢ Newspaper delivered (Mon-Fri);
  ➢ In room movies and video games;
  ➢ Fitness/exercise facilities;
  ➢ Swimming pool

42.    Under the heading "Description of Project," the study described the project as follows: "The VIb is cost effective to build and operate, with a flexible plan for new build design.  Hotel amenities include free wi-fi in lobby and guest rooms, grab-n-go stations serving premium food and coffee, **bar and cozy fireplace**, 700 sq. ft Zen zone, gaming pods, fitness center and more."  (Emphasis added).

43.    On June 19, 2018, Best Western staff completed a follow-up plan review with Syed.  As part of the follow-up plan review, Best Western updated the Property Improvement Plan – Plan Review Document, which again included a reference to a bar at item "J," as shown below:

Papetti Samuels Weiss McKirgan LLP
Scottsdale Quarter
15169 North Scottsdale Road, Suite 205
Scottsdale, AZ 85254

PSWM

14

| J. | COCKTAIL BAR: | |
|---|---|---|
| | **GENERAL:** | |
| | 1   Provide a cocktail bar with food service. | |
| | **BAR FINISHES:** | |

FL-516 Vib 2nd Preliminary Review                Printed 6/19/2018                                    8

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| CONDITION REQUIREMENT: | Waiver/Extension: |
|---|---|
| 2   Provide signature Vib millwork finishes. | |
| **CEILING:** | |
| 3   Provide a ceiling/ architectural feature that delineates the space as its own, while still being part of an overall open plan. *Recommendation: acoustic tile cloud with 2'x2' decorative or reveal edge tile* | |
| 4   Provide a minimum 12'-0" high ceiling. | |
| **DIGITAL MEDIA:** | |
| 5   Coordinate installation requirements with digital media provider. | |
| 6   Provide electrical box for power and cable for a minimum of two (2) televisions to be located on the wall behind the cocktail bar. Providing blocking for installation of 40" televisions. Locate outlets to conceal all wiring/ cords. | |
| **LIGHTING:** | |
| 7   Provide downlights above the bar area. | |
| 8   Provide dimmable decorative lighting fixtures, such as pendants, wall sconces, recessed cans and/ or wall washers. | |
| **HEATING & COOLING:** | |
| 9   Provide central air/ heating. PTAC's are not acceptable in any public area. | |

44.     On July 27, 2018, Best Western sent Syed the revised Terms of Approval, reflecting the modification to the Development Incentive.

## DEFENDANTS EXECUTED AGREEMENTS
## FOR MEMBERSHIP FOR A VIB-BRANDED HOTEL

45.     On August 4, 2018, Syed, on behalf of Supreme, signed the Terms of Approval as its "manager." Syed also signed as the Voting Member and his wife Saba Amin, signed the same day, as shown below:



July 27, 2018

**BEST WESTERN
TERMS OF APPROVAL
REVISED**

Proposed Construction
(Proposed Vib)
Orlando, FL (FL516)
Page 19 of 19

ACKNOWLEDGED and AGREED this _4th_ day of _August_, 20 _18_ by:

AUTHORIZED REPRESENTATIVE:

_Supreme International Hotels Inc_
Entity Name

_[signature]_
Signature of Authorized Signer

_Manager_
Title of Authorized Signer

-AND-

_[signature]_                                        _Saba Amin_
Signature                                              Signature

_SHAKEEL SYED._                                  _SABA AMRIN_
Voting Member's Name                            Voting Member's Spouse's Name

15

46.     By signing the Terms of Approval agreement, Defendants agreed to, among other things:

(a) "read[ing], understand[ing] and agree[ing] to be bound by these Terms of Approval,"

(b) having "had sufficient opportunity to review, understand, and consider these Terms of Approval,"

(c) having "had an opportunity to consult with legal counsel with regard to the Terms of Approval,"

(d) that "any failure to comply with these Terms of Approval may result in cancellation of the application and Membership agreement," and

(e) that "if the approval of your application is terminated after you execute these Terms of Approval (by your withdrawal or by termination/cancellation by Best Western), and you thereafter conduct hotel operations at the approved location under another brand or as an independent hotel or you sell the hotel and the new owner subsequently operates under another brand or as an independent hotel, you shall pay Best Western liquidated damages equal to two thousand dollars ($2,000) per guest room.  Such payment must be made within thirty (30) days of a demand for payment by Best Western."  (Ex. A.)

47.     By signing the Terms of Approval, Defendants also agreed to, among other things, (a) certain deadlines to submit preliminary plans showing compliance with the Vib construction requirements and Vib Signature Features, (b) certain deadlines to begin and complete construction, and (c) to comply with all design requirements; the Vīb prototype drawings; the Vīb Signature Features; the Vīb Brand Standards; the Brand Identity Guidelines for Vīb hotels; and all Regulatory Documents.  (*Id*.)

48.     The Terms of Approval also provided that Defendants would have an area of protection or "member market area," precluding Best Western from working to develop or convert another Vīb branded hotel near Defendants' Hotel.

49.     On October 25, 2018, Best Western's Jackie Smylie sent an email to Syed

16

1    stating:

> As we have discussed, a full-service cocktail bar (complete
> with beer, wine and liquor) is a requirement of the Vīb brand.
> I understand that you do not wish to provide liquor sales at
> your property due to the number of bars already in your
> area.  In conversation with Michael Morton and Rob
> Mentnech I have been advised that the requirement for liquor
> will be waived, but the requirement for beer and wine will
> still apply to your property. You have indicated that you wish
> to have a juice bar at your property. This is a great idea, and I
> believe it will service your market well. You can use the
> same bar facilities for juice during the day, you will just need
> to add beer and wine for purchase in the evening. If you have
> any questions please contact either Rob or myself.

Ms. Smylie copied Rob Mentnech, Michael Morton, and Joe Kneen at Best Western on

the email.  (Ex. F, 10/25/18 Smylie Email).

50.    In addition to referencing other bars in the area, Syed told Best Western

staff around this time that he did not think his parking lot was large enough for a bar

and that the City had certain requirements for extra parking for bars.

51.    Best Western staff asked Syed to provide something from the City about

the parking restrictions, but Syed did not provide anything further on the topic.

52.    On December 3, 2018, Best Western staff completed a follow-up plan

review with Defendants.  As part of the follow-up plan review, Best Western updated

the Property Improvement Plan – Plan Review Document, which again included a

reference to a bar at item "J."

53.    The Plan Review Document included a note about a waiver of the

requirement to serve liquor, but included the requirement to serve wine and beer, as

shown below:

Papetti Samuels Weiss McKirgan LLP
Scottsdale Quarter
15169 North Scottsdale Road, Suite 205
Scottsdale, AZ 85254

PSWM

Papetti Samuels Weiss McKirgan LLP
Scottsdale Quarter
15169 North Scottsdale Road, Suite 205
Scottsdale, AZ 85254

PSWM

| J. | COCKTAIL BAR: | |
|---|---|---|
| | **GENERAL:** | |
| | 1  Provide a cocktail bar with food service. | **10.15.18 DM JS (J.1) -** **Provisional waiver granted** **for liquor requirement at** **cocktail bar provided beer** **and wine is available for** **purchase in the evenings.** |
| | **BAR FINISHES:** | |
| | 2  Provide signature Vib millwork finishes. | |
| | **CEILING:** | |
| | 3  ~~Provide a ceiling/ architectural feature that delineates the space as its own, while~~ ~~still being part of an overall open plan.~~ *~~Recommendation: acoustic tile cloud with~~* *~~2'x2' decorative or reveal edge tile~~* | |
| | 4  Provide a minimum 12'-0" high ceiling. | |
| | **DIGITAL MEDIA:** | |
| | 5  Coordinate installation requirements with digital media provider. | |
| | 6  Provide electrical box for power and cable for a minimum of two (2) televisions to be located on the wall behind the cocktail bar. Providing blocking for installation of 40" televisions. Locate outlets to conceal all wiring/ cords. | |
| | **LIGHTING:** | |
| | 7  ~~Provide downlights above the bar area.~~ | |
| | 8  Provide dimmable decorative lighting fixtures, such as pendants, wall sconces, recessed cans and/ or wall washers. | |
| | **HEATING & COOLING:** | |
| | 9  ~~Provide central air/ heating. PTAC's are not acceptable in any public area.~~ | |
| | **UPDATES:** | |
| | **6.19.18 BDA/KEV:** Calls 1-9 No change. | |
| | **11.27.18 BDA/KEV:** Calls 3, 7 & 9 Complete - 1, 2, 4-6 & 8 In progress. | |

54.      As the project continued to move forward, Defendants had additional iterations of the building/architecture plans for the Hotel to Best Western as Defendants worked to finalize them.  In each set, the plans included a lobby bar as shown below:

a.  Signed Architectural Plans, Dated June 25, 2019 from EGI, Inc. submitted to the City of Orlando for approval:



b.  The City Permit Set that Best Western received July 15, 2020:



c. A set of Owner Supplied drawings that Best Western received on

December 11, 2020 signed by Moreno-Orama Architecture:

55.    On February 28, 2020, Defendants' project met the definition of "under

construction," and an estimated activation deadline of February 27, 2021, was agreed to.

56.    As Defendants began building the Hotel, Defendants engaged in

numerous communications with Best Western about progress, to include sending photos

of progress, selecting a property name, working with the Best Western design

department, seeking extensions to the activation date, which was reset to August 27,

2021, among other topics.

57.    On April 26, 2021, Syed acknowledged the alcohol requirement that he

had already agreed to and sent an email to Best Western staff asking for an "exception"

Papetti Samuels Weiss McKirgan LLP
Scottsdale Quarter
15169 North Scottsdale Road, Suite 205
Scottsdale, AZ 85254

PSWM

to this standard.  He stated, among other things, "I know how difficult it is to make an exception to a guest expectation. . . substituting alcohol for something else . . . I am open to your suggestions, but please forgive me as a man of faith in my religion I cannot comply with this standard." (Ex. G, 4/26/21 Syed Email.)

58.     Thereafter, on June 21, 2021, Defendants submitted a formal request to the Board for a waiver of the requirement to serve alcohol, including the minimum requirement of serving beer and wine.

59.     On July 2, 2021, Best Western notified Defendants that the Board had granted their request for a three-year period, with Defendants not being required to serve any alcohol for three years after activation.  (Ex. H, 7/2/21 Neal Letter.)

60.     On or about August 20, 2021, Defendants requested to extend the activation date to November 27, 2021, which Best Western granted.

61.     Thereafter communications from Defendants as to progress ceased.

62.     In late September 2021, Best Western learned indirectly that Defendants were changing brands for the Hotel from the Vīb brand with Best Western to the Cambria® brand, which is affiliated with Choice Hotels International ("Choice"), a competing hotel brand.

63.     When Best Western inquired as to the potential brand change, Defendants' project manager Bambi Gonzalez indicated that Syed was "planning to switch the brand over, but still figuring things out."

64.     On October 20, 2021, Best Western's Supply Department received a request to purchase mattresses through Best Western's supply partners that were "compatible with Cambria."

65.     Best Western did not receive any formal or written direct communication from Defendants about the change and did not otherwise receive any formal request to terminate from Defendants.

66.     On November 2, 2021, however, Best Western received a letter from Choice's General Counsel stating that Defendants had signed a franchise agreement

Papetti Samuels Weiss McKirgan LLP
Scottsdale Quarter
15169 North Scottsdale Road, Suite 205
Scottsdale, AZ 85254

PSWM

1   with Choice for the Hotel to become a Cambria and that Defendants would not be
2   proceeding with the Vīb project.

3       67.     Upon information and belief, Defendants have received or will be
4   receiving money (e.g., development incentive, key money, advances, or other type of
5   financial contribution or assistance) from Choice for opening the Hotel as a Cambria
6   and signing a franchise agreement with Choice.  Upon information and belief, that
7   figure is $2 million.

8       68.     Defendants were still parties to Terms of Approval Agreement and
9   Membership Agreement with Best Western when they negotiated and entered into a
10  franchise agreement with Choice for the Hotel.

11      69.     On November 22, 2021, Best Western sent a letter to Defendants and
12  explained that Defendants had breached its Agreements with Best Western by not
13  proceeding with the Vīb project and instead signing a franchise agreement with Choice.
14  Best Western demanded payment of the liquidated damages owed in the amount of
15  $240,000 ($2,000 x 120 guest rooms) as expressly agreed to by Defendants in the
16  Terms of Approval signed on August 4, 2018. (Ex. I, 11/22/21 Pricher Letter.)

17      70.     Best Western also explained in its November 22, 2021, letter that there
18  were certain Vīb features that were trademark-protected, and that those trademark-
19  protected features would need to be removed from the Hotel if it was not going to
20  activate as Vīb.

21      71.     In light of potential claims for tortious interference, trademark
22  infringement, bad faith, and other wrongdoing against Defendants and Choice, Best
23  Western also requested that Defendants preserve all evidence concerning
24  communications with and relationship with Choice.

25      72.     The Terms of Approval that Defendants signed specifically address the
26  situation where the Hotel is terminated/cancelled/application withdrawn and the Hotel
27  then operates as a competing brand, such as the Choice/Cambria brand, stating:

28              [I]f the approval of your application is terminated after you

21

Papetti Samuels Weiss McKirgan LLP
Scottsdale Quarter
15169 North Scottsdale Road, Suite 205
Scottsdale, AZ 85254

PSWM

Papetti Samuels Weiss McKirgan LLP
Scottsdale Quarter
15169 North Scottsdale Road, Suite 205
Scottsdale, AZ 85254

PSWM

execute these Terms of Approval (by your withdrawal or by termination/cancellation by Best Western), **and you thereafter conduct hotel operations at the approved location under another brand or as an independent hotel or you sell the hotel and the new owner subsequently operates under another brand or as an independent hotel,** you shall pay Best Western liquidated damages equal to two thousand dollars ($2,000) per guest room.  Such payment must be made within thirty (30) days of a demand for payment by Best Western.

(Ex. A at 1 (emphasis added).)

73.   The Terms of Approval further state:

It is understood and agreed that this amount is fixed as liquidated damages (and not as a penalty) because of the difficulty of ascertaining the exact amount of damages that Best Western may sustain due to the termination, considering that Best Western will have held the market area of the approved location open for you with the understanding that you would become a Member (not a competitor) and that, in so doing, Best Western also refrained from considering other applications for the same market area, thereby losing out on or significantly delaying other opportunities to have a Best Western branded hotel occupy that market area. It is further understood and agreed that said amount fixed as liquidated damages is a reasonable amount, considering the damages that Best Western will sustain in the event the application is terminated.

(*Id*.)

74.   The Terms of Approval provisions addressing liquidated damages as described above recognize that in situations where a hotel is terminated, cancelled or the application is withdrawn, actual damages can be difficult to quantify when considering intangibles such as impact to a brand's competitive presence in a geographic region.

75.   Defendants did not respond to Best Western's November 22, 2021, letter.

76.   On January 19, 2022, Best Western's outside counsel sent a demand letter to Defendants seeking payment of the liquidated damages owed in the amount of $240,000 ($2,000 x 120 guest rooms) as expressly agreed to by Defendants in the Terms of Approval signed on August 4, 2018, and reiterated Best Western's request that they preserve all evidence concerning communications with and relationship with

Choice.  (Ex. J, 1/19/22 Lee-Cota Letter.)

77.     In response, Jaime Eddy of Gulati Law responded on February 1, 2022, on behalf of Defendants, telling Best Western that her clients refused to pay the liquidated damages and stating that Defendants had terminated the relationship with Best Western as a result of their religious beliefs and their desire not to serve alcohol at the Hotel.  (Ex. E, 2/1/22 J. Eddy Letter).

78.     Ms. Eddy's letter included statements, such as "it was not until six months prior to the Grand Opening, that Supreme received notice from BW that they would now be required to serve Alcoholic beverages at the Hotel" and "when Supreme executed the Agreement, there was no indication that the Hotel would be required to serve Alcoholic Beverages," and "Supreme was adamant from the inception of the proposed relationship that they would not be serving alcohol at the Hotel as a result of their religious beliefs."  (*Id.*)

79.     The letter contradicted these foregoing sentiments by likewise stating that "Supreme did contact BW regarding their inability to serve alcohol, as this was discussed prior to Supreme's execution of the Agreement, but BW advised the alcohol requirement was non-negotiable."  (*Id.*)

80.     As described above in paragraphs 30 through 33, Defendants and Best Western did have a discussion about the alcohol requirement prior to Defendants signing the agreements.  Syed had expressed some discomfort about having to provide a bar with alcohol at the Hotel and Best Western told Syed that having a bar that serves alcohol was a non-negotiable requirement for a Vīb hotel.  Despite this, Syed proceeded with the application, requested that Best Western send him the Terms of Approval Agreement and Membership Agreement for execution, and thereafter executed the Terms of Approval and Membership Agreement, which included his contractual commitment to serving alcohol as per the Vīb standards.

81.     Ms. Eddy's February 1, 2022, letter stated that Defendants were moving away from Vīb to a hotel brand that adhered to Defendants' strict religious guidelines

Papetti Samuels Weiss McKirgan LLP
Scottsdale Quarter
15169 North Scottsdale Road, Suite 205
Scottsdale, AZ 85254

PSWM

Papetti Samuels Weiss McKirgan LLP
Scottsdale Quarter
15169 North Scottsdale Road, Suite 205
Scottsdale, AZ 85254

PSWM

1  as to serving alcohol.

2      82.    The Cambria brand, however, also requires alcohol, to include "bars that

3  feature a curated selection of local craft beers," as described on its website at

4  https://www.choicehotels.com/cambria and as shown in the image below:



18     83.    On Choice's developer's website, it describes the Cambria brand as "bar-

19  forward" in its fact sheet available at this link:

20  https://choicehotelsdevelopment.com/wp-content/uploads/2017/05/Cambria-Expansion-

21  Prototype-Development-Sales-Sheet-2021.pdf, and as shown below in this image:

22

23

24

25

26

27

28

ALWAYS UPSCALE. ALWAYS CAMBRIA.

This new prototype option designed specifically for secondary and leisure markets, still maintains a sense of space and place, reflecting the destination with customized art and lobby packages. Prototype plans, with the ease of 50% CAD drawings and standard FF&E packages lowers the expense of interior design and architecture services. A right-sized staffing model means a reduction in FTEs and a more efficient staffing model, without sacrificing service. All with the core brand hallmarks that guests prefer and drive value to you.

• Casually tailored sensibility and locally inspired design        • Bar-forward food and beverage concept
• Same luxe spa-inspired bathrooms                                          • Same spacious guest rooms
• Arrival-advantage                                                                      • Outdoor space

To find out more visit
ChoiceHotelsDevelopment.com/CambriaHotels

© 2021 Choice Hotels International, Inc. All rights reserved.

84.     In a press release about the Cambria brand from September 2021, available at this link: http://media.choicehotels.com/2021-09-30-Cambria-Hotels-Continues-Brand-Growth-With-New-Development-Option-Providing-The-Flexibility-To-Expand-In-More-Of-Guests-Favorite-Destinations, Choice describes the Cambria as having a "bar-forward food and beverage concept, featuring . . . local craft beer, wine and specialty cocktails" and "to go options including a selection of adult beverages like canned cocktails and splits of wine" as shown below:

The new Cambria prototype option will continue to deliver the brand hallmarks and signature amenities that appeal to modern travelers, including:

• Casually tailored sensibility and locally inspired design, reflecting the unique personality of the surrounding community.
• Bar-forward food and beverage concept, featuring freshly made food, local craft beer, wine and specialty cocktails. Also features an elevated marketplace for to-go options including a selection of adult beverages like canned cocktails and splits of wine.
• Contemporary, sophisticated and spacious guestrooms, complete with stylish fixtures, abundant lighting and plush bedding.
• Luxe spa-inspired bathrooms with Bluetooth mirrors.
• Arrival advantage that gives guests precious minutes back through visual orientations of their priority needs, allowing them to identify key areas of the hotel, such as the front desk and elevator, immediately upon arrival.
• Outdoor spaces for productive work or relaxation.

85.     Defendants were aware of Best Western's requirement for Vīb branded hotels to serve alcohol prior to signing the Terms of Approval and Membership

Papetti Samuels Weiss McKirgan LLP
Scottsdale Quarter
15169 North Scottsdale Road, Suite 205
Scottsdale, AZ 85254

PSWM

Agreement and agreed to the requirement when they signed the Terms of Approval and Membership Agreement with Best Western.

86.     Defendants were aware of the alcohol requirement, which Best Western described in multiple Vīb-related materials prior to Defendants signing the Terms of Approval and Membership Agreement, including but not limited to the Vīb brochure describing the features of the Vīb brand, the Vīb prototype plans, the Vīb Style Guide, various other materials on Best Western's website describing the Vīb concept, and the Property Improvement Plan – Plan Review Document, which included a reference to a cocktail bar at item "J."

87.     Defendants' architects included the requirement in multiple iterations of building plans for the project and the feasibility study that Defendants commissioned prior to Defendants executing the Terms of Approval and Membership Agreement included the requirement.

88.     After executing the Terms of Approval and Membership Agreement, Defendants made multiple attempts to seek a waiver or exception to the requirement, relying on a variety of different arguments, from parking-lot space limitations purportedly required by the City of Orlando, to there being too many bars in the area already, to purported religious concerns.

89.     Best Western was under no obligation to grant any waiver or exception; nonetheless Best Western agreed to limit the requirement to beer and wine and then agreed to waive the requirement altogether for three (3) years after activation.

90.     After working with Best Western for over four (4) years and providing Defendants an area of protection or "member market area" precluding Best Western from working to develop or convert another Vīb branded hotel near Defendants' Hotel, and Best Western having dedicated significant resources to supporting this project, Defendants unilaterally decided to abandon their agreements with Best Western and go with a competitor brand.

26

Papetti Samuels Weiss McKirgan LLP
Scottsdale Quarter
15169 North Scottsdale Road, Suite 205
Scottsdale, AZ 85254

PSWM

### COUNT I – BREACH OF CONTRACT

91.     Best Western incorporates by reference the allegations in the preceding paragraphs as though fully set forth herein.

92.     The Terms of Approval and Membership Agreement are valid, binding and enforceable contracts.

93.     Defendants have refused to perform under these agreements and have breached the Terms of Approval and Membership Agreement with Best Western by abandoning the project as a VÄ«b and signing with Choice/Cambria for the Hotel.

94.     Best Western fully performed its obligations under the parties' contract.

95.     Defendants' performance under the parties' contract was not excused.

96.     Defendants were required to pay $240,000, having agreed in the Terms of Approval that  "if the approval of your application is terminated after you execute these Terms of Approval (by your withdrawal or by termination/cancellation by Best Western), and you thereafter conduct hotel operations at the approved location under another brand or as an independent hotel or you sell the hotel and the new owner subsequently operates under another brand or as an independent hotel, you shall pay Best Western liquidated damages equal to two thousand dollars ($2,000) per guest room.  Such payment must be made within thirty (30) days of a demand for payment by Best Western."

97.     Best Western made demand for this payment on November 22, 2021.

98.     To date, Defendants have failed to pay this amount.

### COUNT II – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

99.     Best Western incorporates by reference the allegations in the preceding paragraphs as though fully set forth herein.

100.     The Terms of Approval and Membership Agreement are valid, binding and enforceable contracts.

101.     The agreement contains an implied covenant of good faith and fair dealing.

102.    Defendants' conduct, as described herein, constitutes a breach of the covenant of good faith and fair dealing implied in the contract.

103.    As a direct and proximate result of Defendants' misconduct and failure to perform the parties' contract, Best Western has suffered damages in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Best Western International, Inc. seeks judgment against Defendants, jointly and severally, as follows:

A.      An award to Best Western of its damages in an amount to be proven at trial;

B.      Attorneys' fees and costs pursuant to the Membership Agreement, A.R.S. §§ 12-341 and 12-341.01, and any other applicable law;

C.      Pre- and post-judgment interest; and

D.      Any other relief the Court deems just and proper.

DATED this 11th day of May, 2022.

PAPETTI SAMUELS WEISS MCKIRGAN LLP

/s/Jennifer Lee-Cota
Jared Sutton
Jennifer Lee-Cota

*Attorneys for Plaintiff Best Western International, Inc.*

Papetti Samuels Weiss McKirgan LLP
Scottsdale Quarter
15169 North Scottsdale Road, Suite 205
Scottsdale, AZ 85254

PSWM